
IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

UMB BANK, N.A. as successor trustee  )
under the Indenture of Trust dated October  )     No. 40189-8-III
1, 2013, for the benefit of the holders of  )
Multifamily Housing Revenue Bonds  )
(Eagle Crest Apartments LLC Project),  )
Series 2013,  )
                Respondent,  )
   )
   v.  )
   )
EAGLE CREST APARTMENTS, LLC;  )
BAKKEN HOUSING COMPANY, LLC;  )     UNPUBLISHED OPINION
JOHN T. SESSIONS; HISTORIC  )
HANGARS LLC; FWF, LTD.; ORKNEY  )
AIR LLC; ANY PERSON(S) IN  )
POSSESSION; and ALL PERSONS  )
UNKNOWN, claiming any estate or  )
interest in, or lien or encumbrance upon,  )
the real estate described in the Complaint,  )
   )
                Defendants,  )
   )
HISTORIC FLIGHT FOUNDATION,  )
   )
                Appellant.  )

FEARING, J. — North Dakota judgment debtor Historic Flight Foundation (HFF),

a Washington nonprofit corporation, appeals the Washington superior court denial of

his motion to vacate the North Dakota judgment favoring UMB Bank, N.A. (UMB).

We affirm the superior court.

FACTS

We garner most of the facts from the North Dakota Supreme Court's decision affirming the underlying judgment. *UMB Bank, NA v. Eagle Crest Apartments, LLC*, 2023 ND 4, 984 N.W.2d 360. In 2005, John Sessions founded the John T. Sessions Historic Aircraft Foundation. He later renamed the organization the Historic Flight Foundation.

HFF was established under Washington's Nonprofit Corporation Act, chapter 24.03 RCW, and operates as a public charity under Internal Revenue Code (IRC) sections 509(a)(1) and 170(b)(1)(A). John Sessions serves as the corporation's executive director. The corporation's mission is to display aircraft that illustrate the evolution of aviation technology. HFF's collection includes wood-and-fabric biplanes, early airliners, World War II fighters and bombers, and a turbine-powered aircraft. In December 2019 just in time for COVID-19, HFF began showcasing its historic aircraft collection at Felts Field in Spokane.

John Sessions incorporated other entities in Washington and North Dakota, including Historic Hangers, LLC; FWF, Ltd.; and Orkney Air, LLC. All these entities revolve around aviation.

In 2013, during the Bakken Field oil boom, John Sessions, along with a business partner, formed Eagle Crest Apartments, LLC (the limited liability company) to finance, construct, and operate the 168-unit multifamily Eagle Crest Apartments and related facilities in Williston ("Eagle Crest Project"). UMB Bank serves as the successor trustee for bonds issued by the City of Williston to finance the construction of the project. While seeking financing for the Eagle Crest Project, Sessions claimed personal assets of nearly $39 million and further stated that he controlled two private foundations, Historic Flight Foundation and Sessions Family Foundation, with assets of $21,500,000 and no debt.

In 2015, the limited liability company defaulted on its note securing repayment of the bonds. In 2019, UMB brought suit on the debt in North Dakota District Court, the Peace Garden State's court of general jurisdiction. After securing summary judgment on its foreclosure claim, UMB credit bid its judgment and acquired title to the Eagle Crest Project. The bid did not satisfy the entire debt. Based on evidence from a UMB representative regarding the remaining debt, the court entered a deficiency judgment against the limited liability company for $20,129,475.97.

In the North Dakota District Court, UMB also asserted claims of fraudulent transfers, deceit, and punitive damages against John Sessions and his entities Bakken Housing Company, Historic Flight Foundation, Historic Hangars, LLC, FWF, Ltd., and

3

Orkney Air, LLC (the entities).  UMB sought to pierce the corporate veils of the limited liability company and the other entities.  UMB alleged that Sessions used the entities as a facade for his own individual dealings, treated their accounts as one continuous flow of funds, and, through fraud, emptied the coffers of Eagle Crest to put fuel in his planes, support his failing businesses, and visit luxury hotels, to the detriment of investors, bondholders, and the City of Williston.  *UMB Bank, NA v. Eagle Crest Apartments, LLC*, 984 N.W.2d 360, 363 (N.D. 2023).  Before submitting the case to the jury, the court instructed it on the principles of piercing the corporate veil and the alter ego doctrine.

The North Dakota District Court jury determined that each defendant was the alter ego John Sessions, the limited liability company, and the other defendants.  It also found that Sessions and his entities fraudulently transferred $2.9 million from the limited liability company.  The jury awarded UMB both compensatory and exemplary damages.  The district court issued a judgment in favor of UMB that held all defendants jointly and severally liable.  The court entered additional and separate judgments against Sessions for $902,184.75 and against HFF for $300,728.25.

In 2023, the North Dakota Supreme Court affirmed the judgment after holding that substantial evidence supported the jury verdict.  The court wrote:

> The jury heard testimony and viewed evidence that indicated Sessions disregarded the entities' corporate form and used them for personal purposes.  The jury found each

> Defendant was the alter ego of both Sessions and the other Defendants. The jury also found Sessions and various entities fraudulently transferred roughly $2.9 million to the detriment of investors and engaged in a conspiracy to commit deceit.

*UMB Bank, NA v. Eagle Crest Apartments, LLC*, 984 N.W.2d 360, 367 (N.D. 2023).

The North Dakota Supreme Court also rejected the defendants' challenge to their joint and several liability, by stating, "Defendants have not offered a persuasive explanation for why they, as the alter egos of Eagle Crest Apartments, should not also be responsible for the amount of the deficiency judgment." *UMB Bank, NA v. Eagle Crest Apartments, LLC*, 984 N.W.2d 360, 367 (N.D. 2023). During the course of the North Dakota proceeding, HFF never argued that the North Dakota court lacked subject matter jurisdiction or personal jurisdiction over the defendants.

## PROCEDURE

On April 8, 2022, and before the North Dakota Supreme Court affirmed the judgment against John Sessions and his entities, UMB registered the North Dakota judgment in Spokane County Superior Court under the Uniform Enforcement of Foreign Judgments Act, RCW 6.36.035. The registered judgment named Eagle Crest Apartments, LLC, Bakken Housing Company, LLC, John T. Sessions, HFF, Historic Hangars, LLC, FWF, Ltd., and Orkney Air, LLC as judgment debtors. On August 2, 2022, HFF and the other defendants agreed to the appointment of an ancillary receiver for HFF and several

5

other entities in King County Superior Court. HFF never challenged the validity of the North Dakota judgment in the receivership proceeding.

On July 20, 2023, HFF filed a motion, under CR 60(b)(5), in Spokane County Superior Court to vacate the registration of the foreign judgment. HFF contended that the North Dakota judgment was void because the Washington State Attorney General did not receive notice of the North Dakota lawsuit required under RCW 24.03A.944 and .946. In so arguing, HFF emphasized that the North Dakota Constitution provides that the state district courts possess general jurisdiction over all matters "except as otherwise provided by law." N.D. CONST. art. VI, § 8. In turn, North Dakota courts would look to Washington law to determine notice needed in a suit against a Washington nonprofit corporation. HFF argued that, due to the lack of notice to the Washington Attorney General, the North Dakota District Court lacked subject-matter jurisdiction over HFF.

On July 26, 2023, the King County Superior Court receiver filed a motion to approve the sale of aircraft owned by FWF. HFF objected to the motion and requested a stay of the sale process to raise funds to pay the receiver and preserve the aircraft collection for its charitable purpose. The King County Superior Court denied the request.

On December 14, 2023, the Spokane County Superior Court denied HFF's motion to vacate the North Dakota judgment registered in Washington State. The superior court

6

reasoned that Washington courts must recognize the North Dakota judgment under the Full Faith and Credit clause of the United States Constitution. U.S. Const., Art IV, §1. Whereas a party may collaterally attack a foreign judgment if the issuing state lacked subject matter jurisdiction or personal jurisdiction, the North Dakota District Court possessed both.

## LAW AND ANALYSIS

On appeal, HFF asks this court to reverse the superior court's denial of his motion to vacate the judgment registered in Washington State. In response to HFF's appeal, UMB argues, among other contentions, that HFF waived any right to object to the jurisdiction of the North Dakota court because HFF never argued a lack of jurisdiction before the North Dakota courts. UMB also contends that, even if the Washington notice statutes, on which HFF relies, demanded notice of the North Dakota suit on the Washington State Attorney General, the statutes are not jurisdictional. Washington courts disfavor collateral attacks based on allegations of defective notice. *In re Welfare of H.S.*, 94 Wn. App. 511, 526, 973 P.2d 474 (2000). Furthermore, UMB asserts that the North Dakota court needed to only apply its state's law, not Washington law, when assessing the need to serve interested parties. We do not address these alternative arguments because we agree with UMB that RCW 24.03A.944 and .946 did not require

7

notice of the North Dakota lawsuit be given the Attorney General even assuming the North Dakota court should have applied Washington law.

All of HHF's assignments of error dovetail into its central contention that the Spokane County Superior Court should have vacated the registration of the North Dakota judgment because UMB failed to send notice of the pending suit to the Washington Attorney General. According to HHF, Washington State need not afford the North Dakota judgment full faith and credit to a judgment rendered by a court that lacked jurisdiction over the subject matter or the relevant parties. *V.L. v. E.L.*, 577 U.S. 404, 407, 136 S. Ct. 1017, 194 L. Ed. 2d 92 (2016). HHF's appeal assumes that the North Dakota court lacked jurisdiction because UMB did not comply with RCW 24.03A.944 or .946, Washington statutes that require the Attorney General to receive notice of some suits against a Washington nonprofit corporation.

HFF relies on RCW 24.03A.944. The statute reads:

> (1) Every notice to the attorney general required under this chapter must be served upon the attorney general. Service upon the attorney general must be via United States mail, postage prepaid, or by other means as authorized by the attorney general.
> (2) Every notice to the attorney general under this chapter shall identify the provisions of this chapter relevant to the subject matter of the notice.
> (3) *Any person that has commenced any proceeding which this chapter authorizes the attorney general to bring, including but not limited to any proceeding involving a charitable corporation or property held for charitable purposes brought under RCW 24.03A.185, 24.03A.200,*

8

> *24.03A.610, 24.03A.922, 24.03A.936, or 24.03A.966, shall serve notice of the commencement of the proceeding upon the attorney general.* Any other party to such a proceeding may serve notice of the commencement of the proceeding upon the attorney general. To be valid, the notice must identify that it is being given pursuant to this subsection. The attorney general may waive this notice at any time.

(Emphasis added.)

The statute, part of the nonprofit corporation code, requires notice to the Washington Attorney General in proceedings authorized to be brought by the attorney general under Chapter 24.03A RCW. The statute lists some of those lawsuits: a suit brought by the Washington Attorney General to enforce a restriction in a nonprofit corporation's gift instrument, RCW 24.03A.185; a suit brought by the nonprofit corporation to apply a gift to a purpose other than the corporation's charitable purpose, RCW 24.03A.200; a suit against a director or officer of the nonprofit corporation for an unlawful distribution of property, RCW 24.03A.610; a suit against a dissolved nonprofit corporation for the purpose of realizing on undistributed assets, RCW 24.03A.922; a proceeding by the Washington Attorney General to dissolve the nonprofit corporation, RCW 24.03A.936; and a challenge to the validity of any of the nonprofit corporation's action, RCW 24.03A.966.

The North Dakota suit was an action to collect a debt owed by the Washington nonprofit corporation, HFF. RCW 24.03A.944 demands no notice to the Attorney

9

General when a creditor or a bond trustee sues a nonprofit corporation in Washington State or in any other state. RCW 24.03A.944 does not read that its provisions extend to a suit in a foreign jurisdiction.

HFF particularly relies on RCW 24.03A.946. This second statute reads:

> The attorney general may commence in the court described in RCW 24.03A.025 any action or proceeding to:
> (1) Ensure compliance by a nonprofit corporation, or its members, directors, officers, employees, or agents, with any provision of this chapter that governs the distribution, disposition, management, or expenditure of, or reporting obligations relating to, any property held for charitable purposes;
> (2) Secure the proper administration of a charitable corporation, or of property held for charitable purposes by a nonprofit corporation, when reasonably necessary to protect property held for charitable purposes; and
> (3) Restrain and prevent any act that violates any provision of this chapter that governs the distribution, disposition, management, or expenditure of, or reporting obligations relating to, any property held for charitable purposes.

The Washington legislature adopted RCW 24.03A.946 during the pendency of the North Dakota District Court litigation. Assuming for argument's sake that the statute applies retroactively, neither the North Dakota case nor the subsequent enforcement action in Washington qualifies as an action that RCW chapter 24.03A "authorizes the attorney general to bring." RCW 24.03A.946. UMB's suit in North Dakota was a debt collection action, wherein UMB sought to pierce the corporate veil. The suit did not seek to ensure HFF's compliance with any provision of Chapter 24.03A. RCW. The suit did

10

not seek to secure the proper administration of HFF as a charitable trust. The North

Dakota lawsuit did not ask for an injunction against a violation of Chapter 24.03A. RCW.

RCW 24.03A.944 did not restrict UMB's right to pursue an action under North Dakota

law against John Session and his alter egos for misappropriating millions of dollars.

Finally, HFF cites RCW 11.110.120. This last statute declares:

> The attorney general may institute appropriate proceedings to secure
> compliance with this chapter and to secure the proper administration of any
> trust or other relationship to which this chapter applies. He or she shall be
> notified of all judicial proceedings involving or affecting the charitable trust
> or its administration in which, at common law, he or she is a necessary or
> proper party as representative of the public beneficiaries.

HFF contends that some of its assets are in a charitable trust. Regardless, HFF is a

nonprofit corporation, not a charitable trust. UMB did not sue in North Dakota to secure

the proper administration of any trust. HFF does not argue that the Attorney General

would have been a necessary or proper party under common law for a debt collection

action filed against a charitable trust in another state.

## CONCLUSION

We need not discuss principles behind vacating judgments. We affirm the

superior court's denial of the motion to vacate the registration of the North Dakota

judgment.

No. 40189-8-III
*UMB Bank, N.A. v. Eagle Crest Apartments, LLC*

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Fearing, J.

WE CONCUR:

Cooney, J.

Staab, A.C.J.