NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JASON MAXWELL, et al., *Plaintiffs/Appellants*,

*v.*

HARLEY MAGUIRE, et al., *Defendants/Appellees*.

No. 1 CA-CV 21-0065
FILED 10-7-2021

Appeal from the Superior Court in Maricopa County
No. CV2020-002364
The Honorable M. Scott McCoy, Judge

**AFFIRMED**

COUNSEL

Windtberg Law, PLC, Phoenix
By Marc Windtberg
*Counsel for Plaintiffs/Appellants*

DuMond Law, PLLC, Phoenix
By Samantha K. DuMond
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

---

**M c M U R D I E**, Judge:

**¶1**        Jason and Greg Maxwell ("Maxwells") appeal from the superior court's summary judgment for Harley Maguire and her spouse. We reject the Maxwells' claims and affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        The parties stipulated to the relevant facts. Steven Slager was the biological father of Maguire and the Maxwells, but the Maxwells were adopted in Massachusetts. Twenty-seven years later, Slager died in a motorcycle accident in Arizona. Maguire, who was not adopted, brought a wrongful death action and eventually accepted a $275,000 settlement.

**¶3**        The Maxwells sued Maguire for conversion and unjust enrichment and sought two-thirds of the wrongful-death settlement. Maguire moved for summary judgment, arguing that the Maxwells had no right to the settlement because, under Arizona law, the adoption terminated all "legal consequences" of their relationship with Slager, including standing to bring a wrongful death action. *See* A.R.S. § 8-117(B); *Edonna v. Heckman*, 227 Ariz. 108, 110, ¶ 11 (App. 2011). In response, the Maxwells agreed with Maguire's characterization of Arizona adoption law. Still, they argued that Massachusetts adoption law applied and gave them standing in an Arizona wrongful death action.

**¶4**        The court granted summary judgment after concluding that the Maxwells lacked standing under the law of either state. The court reasoned that the right to bring a wrongful death action in Arizona is a right to compensation, not to inheritance and that the laws of both states terminated the right to compensation when terminating legal consequences of a biological relationship. The court awarded costs to Maguire but declined to award attorney's fees. The Maxwells appealed, and we have jurisdiction under A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

**DISCUSSION**

¶5        The Maxwells raise the same arguments rejected by the superior court. Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). "We review a trial court's grant of summary judgment *de novo* and independently determine whether [the] court's legal conclusions were correct." *Goldman v. Sahl*, 248 Ariz. 512, 519, ¶ 16 (App. 2020) (quoting *Ledvina v. Cerasani*, 213 Ariz. 569, 570, ¶ 3 (App. 2006)). We view the facts in the light most favorable to the party against whom summary judgment was granted. *Andra R Miller Designs LLC v. US Bank NA*, 244 Ariz. 265, 268, ¶ 9 (App. 2018). We review *de novo* the construction and applicability of statutes. *Stein v. Sonus USA, Inc.*, 214 Ariz. 200, 201, ¶ 3 (App. 2007).

¶6        Arizona's wrongful death statute authorizes a surviving "child" of the deceased to bring a wrongful death claim. A.R.S. § 12-612(A). The statute does not define "child," but we have interpreted Arizona adoption statutes to exclude a biological child who is later adopted. *Edonna*, 227 Ariz. at 110, ¶¶ 12–14 (Because A.R.S. § 8-117(B) provides that the previous parent-child relationship is "completely severed," and all "legal consequences" of the relationship no longer exist, the right to a wrongful death action, a "legal consequence" of the former relationship, is lost.). But the Maxwells argue that because Massachusetts adoption law and inheritance law reflect an attempt to preserve a biological parent-child relationship in cases of stepparent adoptions, the Full Faith and Credit Clause of the United States Constitution requires that we consult Massachusetts law to define "child" in our application of A.R.S. § 12-612(A). We disagree because while the Full Faith and Credit Clause requires us to honor Massachusetts *judgments*, it does not require us to define A.R.S. § 8-117(B) according to Massachusetts law.[1] Thus, we affirm the superior court's summary judgment.

¶7        Article IV, Section 1 of the United States Constitution requires that every state give "Full Faith and Credit . . . to the public Acts, Records, and judicial Proceedings of every other State." The purpose of the Full Faith and Credit Clause is "'to alter the status of the several states as independent foreign sovereignties . . . and to make them integral parts of a single

---

[1]        Because we conclude that Massachusetts law does not influence our interpretation of A.R.S. § 8-117(B), we reach no conclusion about interpreting Massachusetts law.

nation.'" *Milwaukee Cty. v. M.E. White Co.*, 296 U.S. 268, 277 (1935). As a result, an Arizona court must give credit to the judgment of another state, even if we would not entertain the claim on which the judgment was founded. *See id.*

¶8 The Maxwells cite several adoption cases to argue that this obligation extends to their desired application of Massachusetts adoption law. *See, e.g.*, *Embry v. Ryan*, 11 So. 3d 408, 409 (Fla. Dist. App. 2009) (Florida court must give full faith and credit to Washington adoption.). But these cases show only that Arizona courts must recognize the validity of the Maxwells' adoption, a matter not in dispute. By contrast, the Maxwells argue that unless we consult Massachusetts adoption and inheritance law when interpreting the word "child" in Arizona's wrongful death statute, we fail to give full faith and credit to the Massachusetts adoption.

¶9 To support their understanding of the Full Faith and Credit Clause, the Maxwells rely on language requiring us to recognize the judgments of other states and "give effect" to them as their states of origin would. *See, e.g.*, *V.L. v. E.L.*, 577 U.S. at 406–07, 410 (2016) ("[The] Clause requires each State to recognize and give effect to valid judgments rendered by the courts of its sister States."); 28 U.S.C. § 1738 (Judgments must have "the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.").

¶10 The Maxwells misunderstand the legal significance of the Massachusetts adoption statute in part because they misunderstand our use of its Arizona counterpart in *Edonna*. In *Edonna*, the governing law was A.R.S. § 12-612(A), and the issue was its interpretation. 227 Ariz. at 110, ¶¶ 9–11. Because the wrongful death claim is statutorily based, and because the statute's plain language creates "a limited class of beneficiaries who may sue," the question was whether the plaintiff was among them, and specifically whether he was the decedent's "child." *Id.* at 110, ¶¶ 9–12. To determine what the legislature meant by "child," this court referred to Arizona's adoption statute, A.R.S. § 8-117. *Id.* at ¶ 13. We reasoned "the legislature's intent, purpose and policy are clearly expressed in the all-encompassing language of A.R.S. § 8-117—which completely severs the parent-child relationship and extinguishes 'all' rights and obligations flowing from it." *Id.* at 112, ¶ 23. Here, we recognize the legitimacy of the Maxwells' adoption and apply the same analysis.

¶11 If the Maxwells had a claim for wrongful death in Massachusetts, then Massachusetts law would apply. Because this is an

Arizona judgment for wrongful death under Arizona law, however, we need not consult Massachusetts law. *See United States v. Lanza*, 260 U.S. 377, 382 (1922) ("Each government in determining what shall be an offense against its peace and dignity is exercising its own sovereignty, not that of the other."). This conclusion is inescapable under A.R.S. § 8-125:

> Where an adoption has been judicially decreed by a court in another state, such decree shall have the same force and effect as to matters within the jurisdiction of this state as though it had been granted by a court of this state.

In resolving who may bring an Arizona wrongful death claim, Arizona courts need to look no further than whether the litigant qualifies under its laws.

## ATTORNEY'S FEES AND COSTS

**¶12**        Maguire requests an award of costs under A.R.S. § 12-341 and attorney's fees under A.R.S. § 12-349 and -341.01. We grant costs to Maguire as the prevailing party. A.R.S. § 12-341. In our discretion, we decline to award attorney's fees.

## CONCLUSION

**¶13**        We affirm the superior court's judgment.



AMY M. WOOD • Clerk of the Court
FILED:    AA